STATE of Missouri, Respondent,

v.

Steven HENDRIX, Appellant, and Megan H. Hendrix, Edmond G. Hendrix, Sr., And Edmond G. Hendrix, Jr., Appellants.

No. WD 55375.

Missouri Court of Appeals, Western District.

Dec. 29, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1999.

Application for Transfer Denied March 23, 1999.

William Erdrick, St. Joseph, for Appellants.

Laura Donaldson, Asst. Pros. Atty., St. Joseph, for Respondent.

PAUL M. SPINDEN, Presiding Judge.

Steven Hendrix, Megan Hendrix, Edmond Hendrix, Sr., and Edmond Hendrix, Jr., appeal the circuit court's judgment for forfeiture of $40,108 under the Criminal Activity Forfeiture Act (CAFA) pursuant to § 513.607.[1] We affirm the judgment.

Steven Hendrix allegedly delivered cocaine to a confidential informant of the Buchanan County Drug Strike Force seven times during March and April, 1992. On May 18, 1992, Buchanan County authorities executed a search warrant at Hendrix's house. Authorities seized Hendrix's property, and, on May 26, 1992, the prosecuting attorney filed a petition under CAFA seeking a forfeiture of the property.

On June 26, 1992, the prosecutor charged Hendrix by information with three counts of delivering a controlled substance. The prosecutor had grounds for charging him with four additional counts. On October 22, 1992, Hendrix pleaded guilty to one count of delivery of a controlled substance. Pursuant to the plea agreement, the prosecutor agreed to forego prosecution of the additional counts, and Hendrix agreed to pay $40,108 to Buchanan County.

Hendrix submitted a cashier's check for $40,108 to Buchanan County's treasurer on October 22, 1992. Along with the check, Hendrix presented an affidavit stating that he voluntarily surrendered the money and that the $40,108 represented profits earned from his illegal sale of drugs. Hendrix's affidavit said that he waived his right to a hearing under CAFA and consented to forfeiture of the money.[2]

Megan Hendrix, Edmond Hendrix, Sr., and Edmond Hendrix, Jr., as members of Steven Hendrix's family, were aware of the plea bargain agreement and assisted Steven Hendrix in raising the $40,108 from their own resources. The family knew that Steven Hendrix would give the money to governmental authorities as repayment of profits he had gained from selling drugs. They also knew that the payment was part of a plea bargain in which the prosecutor agreed not to file additional charges against Steven Hendrix.

The county treasurer deposited $32,200 of Hendrix's payment in the Law Enforcement Sales Tax Fund as reimbursement for funds which officers used to purchase cocaine from Hendrix. The prosecutor amended the petition in the pending CAFA action seeking to add the remaining $7908 of Hendrix's payment to the property sought for forfeiture.

Hendrix's family filed a petition to intervene in the CAFA action and a motion to include the $32,200 deposited in the Law Enforcement Sales Tax Fund in the forfeiture proceeding. The circuit court allowed the family to intervene in the forfeiture proceeding, but it found that the family had no standing to contest disbursement of Hendrix's payment. The circuit court denied the Hendrixes' motion to include the $32,200 in the forfeiture proceeding.

The family appealed to this court. We held that the family had standing to assert a claim to the surrendered money and that the $32,200 and the $7908 had to be included as funds sought to be forfeited under CAFA. *State v. Hendrix,* 944 S.W.2d 311 (Mo.App.

---

1. All statutory citations refer to the 1994 Revised Statutes of Missouri.

2. In 1993, the General Assembly enacted § 513.617.3, RSMo, which prohibits the use of

seized property to negotiate plea agreements. This statute, however, was not in effect when Hendrix pleaded guilty.

1997). On remand, the circuit court heard additional evidence and ordered that the $40,108 paid by Hendrix as part of his plea agreement be forfeited to the state under CAFA. Hendrix and his family appeal.

They assert that the circuit court committed error by forfeiting the $40,108. They argue that, because the money used to purchase the cashier's check was not the actual money which Steven Hendrix earned in his illegal drug transactions, the state cannot forfeit the money and that the state must return the money to them. They contend that, because the circuit court found that Steven Hendrix did not derive the money directly from illegal drug transactions or use it in any illegal activity, the forfeiture violates § 513.607.1.[3] We disagree.

First, we consider Steven Hendrix's claim to the money. His claim is without merit. In his affidavit, he said:

... [A]s a result of illegal drug sales, in which I had engaged, prior to June 26, 1992, I made a profit therefrom, in the sum of ... $40,108.00 ...; I was able to deposit the sum of ... $20,000.00 ... in a savings account, at the Commerce Bank, of St. Joseph, Missouri; the remaining profit, in the sum of ... $20,108.00 ..., I invested in silver and silver coins, as an investment.

... [A]s part [of] a plea agreement, with the State of Missouri, in Case No. CR592–369FX, I will voluntarily surrender to the Prosecuting Attorney, of Buchanan County, Missouri, a bank draft, made payable to the County Treasurer, of Buchanan County, Missouri, in the sum ... $40,108.00 ..., which represents the total profits I earned form the illegal sale of controlled substances, within Buchanan County, Missouri, as above set out.

... I have been advised by my attorney, that I would have a right to a hearing, under the Criminal Activities Forfeiture Act of the State of Missouri, to determinine [sic] whether the above-listed cash

assets were subject to forfeiture[;] however, I admit that the sum of cash money ... was derived from the illegal sale of controlled substances, and I do hereby waive my right to said hearing, and consent to the forfeiture of said cash money.

In exchange for the $40,108, the prosecutor agreed to forgo prosecution of the additional counts of the Class B felony of delivery of a controlled substance. By having to plead guilty to only one count, Steven Hendrix avoided exposure to the possibility of sentences totaling 90 years.

■ Steven Hendrix's position is untenable. He swore to authorities that he generated the money from illegal drug sales. He also knew that his agreement that the money came from his illegal drug sales and the payment of the money to Buchanan County was an integral part of his plea agreement with the prosecutor and would result in his having to plead guilty only to one count of delivery of a controlled substance. The courts will not hear Steven Hendrix collaterally attack the veracity of his affidavit in the CAFA proceeding. He is estopped from raising the issue that his affidavit was untrue. *See Adams v. Inman*, 892 S.W.2d 651, 654 (Mo.App.1994), *cert. denied*, 516 U.S. 847, 116 S.Ct. 140, 133 L.Ed.2d 87 (1995).

Equally untenable is the claim of Steven Hendrix's family. Section 513.610 gives any person claiming an interest in property which the state seeks to have declared as forfeited the right to intervene in the forfeiture action.[4] Section 513.615 says, "The interest of an innocent party in the property shall not be subject to forfeiture." Steven Hendrix's family, however, did not establish that they had an interest in the money.

■ Hendrix's family voluntarily raised the money and gave it to Steven Hendrix knowing well the purpose for which he would use it. They were aware that he had represented to the state that he had derived the

---

**3.** Section 513.607.1 says, "All property of every kind used or intended for use in the course of, derived from, or realized through criminal activity is subject to civil forfeiture. Civil forfeiture shall be had by a civil procedure known as a CAFA forfeiture proceeding."

**4.** This court allowed the family to intervene to assert a claim to the surrendered money. *State v. Hendrix*, 944 S.W.2d 311 (Mo.App.1997). We did not, however, determine whether that claim was valid.

$40,108 from his illegal drug sales, and they knowingly paid the money to replace the money which Steven Hendrix said he had realized as profits from his drug transactions. Once the family voluntarily transferred ownership of the money to Steven Hendrix, they relinquished any claim to it. It became his. Steven Hendrix's family, therefore, no longer has an interest in the property.

The Hendrixes argue that, because the circuit court found that "the actual dollars transferred were not directly derived from illegal drug transactions," the circuit court was obligated to return the money to them. We disagree. Because the family did not have an interest in the property and because Steven Hendrix swore that he derived the $40,108 from his illegal drug sales, the circuit court did not err in forfeiting the money.

We affirm the circuit court's judgment.

ROBERT G. ULRICH, Judge, and EDWIN H. SMITH, Judge, concur.